UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMERICAN K-9 DETECTION
SERVICES, INC. AND AMERICAN
K-9 DETECTION SERVICES, LLC,

    Plaintiff,

v.                                        Case No.: 6:14-cv-1988-Orl-37TBS

RUTHERFOORD INTERNATIONAL, INC.,
a foreign corporation and SARA PAYNE,
a citizen of the state of Virginia,

    Defendants.
_____/

### DEFENDANTS' *DAUBERT* MOTION TO PRECLUDE THE TESTIMONY OF PLAINTIFFS' PURPORTED EXPERT, WILLIAM HAGER, AND MEMORANDUM OF LAW IN SUPPORT

    Defendants, Rutherfoord International Inc. ("Rutherfoord") and Sara Payne (collectively "defendants"), move this Court for an order precluding plaintiffs, American K-9 Detection Services, Inc. and American K-9 Detection Services, LLC (collectively "AMK9"), from offering the testimony of their purported expert, William Hager, and in support thereof state as follows:

**I. Introduction**

    Mr. Hager proposes to testify regarding what "a reasonably prudent insurance agent" should do under the circumstances of this case.[1] AMK9 contends that Rutherfoord gave incorrect advice regarding the availability of Defense Base Act ("DBA") insurance.[2] By his own

---

[1] Mr. Hager uses the terms "broker" and "agent" interchangeably. *See* Exhibit 1 at 99:25-100:6; Exhibit 2 at 3. All references to "Exhibit __" refer to Exhibits to the Notice of Filing Exhibits in Support of Defendants' *Daubert* Motion to Preclude the Testimony of Plaintiffs' Purported Expert William Hager.

[2] *See* Second Amended Complaint, Dkt. 30, ¶13.

admission, however, Mr. Hager has never been a broker or agent.[3] Nor has he consulted with any "reasonably prudent" broker or agent concerning any issue in this case.[4] Mr. Hager has never placed, brokered, bound, issued, or underwritten any type of insurance for any client in any market, ever, let alone DBA insurance for a client in Florida.[5]

Because he lacks these credentials, Mr. Hager has been disqualified by a number of federal judges, including within the Middle District and Southern District of Florida, when seeking to opine regarding custom and practice in the insurance industry.[6] Indeed, ***AMK9's own attorney***, Mr. Brian Stokes, moved to strike Mr. Hager in a prior Middle District of Florida case in which Mr. Hager also proposed to testify regarding insurance custom and practice.[7] Mr. Stokes represented to Judge Merryday that Mr. Hager was "not qualified to express that opinion. He has never worked as an underwriter. He has never worked for an insurance company. He has never had to make that decision."[8] According to Mr. Stokes, Mr. Hager was "***simply making it up as he goes along*** because he has – he has no expertise in that area. He's never worked in that industry."[9] The Court should reach the same conclusion here and grant defendants' motion.

In addition, the Court should disqualify Mr. Hager because his proposed opinions are unreliable. Other federal courts previously determined that Mr. Hager "completely ignores the undisputed record," "fails to address Plaintiff's delays in providing [Defendant] relevant

---

[3] Exhibit 1 at 21:1-5; 21:19-21; 22:8-22:9; 23:4-23:5; 23:9-11; 23:13-14; 24:25-25:3.

[4] *Id.* at 25:16-22.

[5] *Id.* at 28:3-6; 80:24-81:1; 88:23-89:2; 89:20-22.

[6] *See, e.g.,* Exhibit 3 at 1 and Exhibit 4 at 2.

[7] Exhibit 5.

[8] *Id.* at 188. Mr. Stokes directly challenged Mr. Hager's "credentials to give the opinion." *Id.* at 189.

[9] Exhibit 5 at 189 (emphasis added).

information" and "selectively cites" authority that may well be "taken out of context."[10] Here, Mr. Hager reached his opinions by completely ignoring undisputed material facts. For example, Mr. Hager argues that AMK9's admitted failure to provide its contract with the Canadian government—which was required as part of the underwriter's application for DBA coverage, and which AMK9 specifically committed to provide to Rutherfoord—was "irrelevant."[11] Mr. Hager also rejects AMK9's testimony, including from its Fed. R. Civ. 30(b)(6) deponent, that AMK9 bears responsibility for failing to obtain DBA coverage before accidents to three of its employees.[12] According to Mr. Hager, this sworn testimony about crucial communications in this case has "no bearing" on his opinions.[13]

Finally, the Court should disqualify Mr. Hager because his proposed testimony will not assist the jury. Mr. Hager intends to testify that Rutherfoord had obligations "over and above that ordinarily expected of an insurance agent," due to a supposed "special relationship" between the parties. But Mr. Hager himself admits that a Florida federal court already determined that this exact same testimony would be an impermissible legal opinion.[14]

As shown in detail below, the Court should grant defendants' motion and preclude all testimony from Mr. Hager.

---

[10] *Sadel v. Berkshire Life Ins. Co.*, 2011 WL 292239, *12 (E.D. Pa. Jan. 31, 2011), *aff'd*, 473 F. App'x 152 (3d Cir. Mar. 30, 2012); *Old Line Life Ins. Co. v. Brooks*, Case No. 3:05-cv-722 DPJ-JCS, 2007 WL 892448, *9 (S.D. Mississippi Mar. 22, 2007).

[11] Exhibit 1 at 40:10-12; 41:17-19; 159:11-16.

[12] *Compare* Exhibit 1 at 163:3-14 *to* Exhibit 6 at 243:20-244:18; Exhibit 7 at 236:8-237:11.

[13] Exhibit 1 at 164:3-6; 164:20-24.

[14] *Id.* at 55:13-56: 2; 104:4-7.

3

## II. Memorandum of Law

### A. Legal standard.

Rule 702 "confers on trial judges the role of "gatekeeper" when considering the use of expert testimony." *Fed. Deposit Ins. Corp. v. Attorneys Title Ins. Fund, Inc.*, 2015 WL 6736751, at *2 (M.D. Fla. Nov. 4, 2015). The proponent of the expert opinion "bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence." *Wilson*, 2015 WL 895635, at *15. District courts consider the following three-prong inquiry:

> (1) the expert is *qualified* to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently *reliable* as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony *assists the trier of fact*, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Wilson*, 2015 WL 8956435, at *15 (11th Cir. Dec. 16, 2015) (citing Fed. R. Evid. 702). Mr. Hager fails all three prongs.

### B. Mr. Hager is not qualified to testify.

It is not enough "that a witness is qualified in some way related to the subject matter at hand. Instead, the witness must have special knowledge about the discrete subject on which he or she is to testify." *Konikov v. Orange Cnty., Fla.*, 290 F. Supp. 2d 1315, 1317 (M.D. Fla. 2003). Courts routinely reject proposed experts as unqualified, notwithstanding their expertise in a general area, where they lack knowledge or experience concerning the specific issue on which they have been retained to opine. *See, e.g., Lopez v. Allstate Fire & Cas. Ins. Co.,* 2015 WL 5584898, at *5 (S.D. Fla. Sept. 23, 2015) (attorney with thirty-six years in insurance law was unqualified to provide testimony as to proper claims handling, because he had never been an adjuster, had never managed adjustors, had never been employed by an insurance company, and had never received training on proper claims adjusting); *Butler v. First Acceptance Ins. Co., Inc.*,

652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) (expert's "years of working only for State Farm" did not qualify him "to opine on matters of the broader insurance industry"); *Novak v. Progressive Halcyon Ins. Co.*, 2005 WL 5989782, at 4-5 (M.D. Pa. Sept. 13, 2005) (excluding expert in bad faith case where experience was as Insurance Commissioner and lawyer practicing insurance law, but expert had no experience in internal handling of claims).

Here, Mr. Hager is not qualified to testify regarding a broker advising its client about insurance. He has no personal experience as a broker placing DBA insurance for clients in Florida, for the simple reason that he has never been a broker anywhere, nor has he ever placed, bound, issued, or obtained any type of insurance for any client.[15] He has never been licensed as a broker in any state, has never received any training or education as a broker, and has never held any of the day-to-day job responsibilities of a broker. Nor has Mr. Hager ever sold insurance of any type in any market. In short, because Mr. Hager has no "special knowledge about the discrete subject" of a broker advising its client regarding the availability of insurance, he is not qualified to opine before the jury. *Konikov*, 290 F. Supp. 2d at 1317.

Several Florida federal courts have already made this determination, disqualifying Mr. Hager from providing *any* expert testimony at trial.[16] In fact, as recently as February 18, 2014, Judge Daniel T.K. Hurley of the Southern District of Florida granted a motion to exclude all expert testimony by Mr. Hager, on the basis that he lacked appropriate qualifications.[17] Judge Hurley expressed serious concerns regarding Mr. Hager's complete lack of credentials with respect to the same topic at issue here—a broker advising its client regarding the availability of

---

[15] Exhibit 1 at 21:1-5; 21:19-21; 22:8-22:9; 23:4-23:5; 23:9-11; 23:13-14; 24:25-25:3.

[16] Exhibit 3; *see also Nova Cas. Co. v. Waserstein*, No. 04-20755-CIV, 2005 WL 5955694 (Sept. 7, 2005).

[17] Exhibit 4 at 2.

insurance. Judge Hurley concluded Mr. Hager was not competent to give *any* testimony, as he lacked "day-to-day experience" in advising clients:

> The Court: "Now let's go back to what is the crucial issue, the competency of your expert. Tell me about that. ***He doesn't sound like he is competent.*** What experience has he had as a broker to give advice to a client about the kind of insurance they need in South Florida?"
>
> Counsel: "He has been practicing in Florida since 1990."
>
> The Court: "Practicing what?"
>
> Counsel: "He has opened a series of insurance advisory companies. He has been in the actuarial field, worker's compensation field, on the insurance committee, and a state legislature. I want to make a point here. He wasn't, when we hired him --"
>
> The Court: "Does this man have day-to-day experience in making recommendations to clients in South Florida about the kind of coverage they need for their property?"
>
> Counsel: "He has general experience in regulating and supervising the responsibilities of brokers."
>
> The Court: "***That is not enough.***"[18]

In *Tiara Condominium*, Mr. Hager intended to testify regarding the alleged "special relationship" between a broker and its client.[19] Judge Hurley questioned whether Mr. Hager, himself not a broker, could be "competent" to provide that testimony, and then analyzed his "work experience, the background to be able to give that kind of an opinion."[20]

As here, in an attempt to circumvent his lack of experience as a broker, Mr. Hager argued in *Tiara Condominium* that he had relevant legislative expertise, industry expertise, reinsurance

---

[18] Exhibit 8 at 82:17-83:12 (emphasis added).

[19] Exhibit 2 at 10, Opinion 4. Under Florida law, absent a special relationship, a broker has no general duty "to advise the insured as to the insured's insurance coverage needs." *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1280, (S.D. Fla. 2014) (citing cases).

[20] Exhibit 8 at 83:25-84.

6

QB\38111563.1

arbitration expertise, and legal expertise.[21] When reviewing these experiences, Judge Hurley acknowledged that Mr. Hager "sounds like he has tremendous credentials, insurance commissioner of a state, a member of the Florida Legislature and being on the insurance committee of the Florida Legislature."[22] Despite such experiences, however, Judge Hurley was "really concerned about" allowing Mr. Hager to testify, due to the court's responsibility "to make sure these people who walk in have the cloak of being an expert, and it's a very real impact on the jury that they do have the kind of experience that allows them to give these opinions."[23]

After a thorough briefing and argument, Judge Hurley concluded that Mr. Hager was not qualified because "while he has knowledge of insurance principles in general, he doesn't have the kind of in-depth experience that would allow him to give this kind of opinion."[24] Judge Hurley found that "this gentleman has wonderful titles that at first glance suggest that great credence should be given to it. Of course, that is part of the problem because he doesn't have any of the day-to-day experience, demonstrable experience that would allow him to opine in these areas."[25] Although Mr. Hager sat on a legislative committee dealing with insurance, "that doesn't speak to the crucial issue of what an insurance broker advised a client like Tiara."[26] Mr. Hager sought to opine that the broker had "breached its obligations to its client," had "not acted as a reasonably prudent insurance professional," and that the broker had "violated customs and standards of [the] insurance industry."[27] Judge Hurley was "deeply concerned" that Mr. Hager's

---

[21] Exhibit 2 at 6-7. Mr. Hager presented these same credentials in his expert report in the *Tiara Condominium* case. Exhibit 1 at 96:22-97:4.

[22] Exhibit 8 at 84:10-13, 87:6-7; *see also* Exhibit 1 at 97:15-23.

[23] Exhibit 8 at 84:24, 87:1-5.

[24] *Id.* at 85:3-5.

[25] *Id.* at 91:6-10; *see also* Exhibit 1 at 99:5-11.

[26] Exhibit 8 at 91:11-15.

[27] Exhibit 1 at 91:10-18.

opinions on *any* of these topics "may be misleading and prejudicial because of the lack of experience," and thus ruled he could not provide any testimony.[28]

The Court should reach the same result, for the same reasons. Mr. Hager argues that Rutherfoord "breached its obligations" to its client, AMK9.[29] But he has never been a broker, agent, or underwriter, nor has he ever placed, issued, or otherwise obtained any insurance on behalf of any client.[30] Mr. Hager himself cannot opine what a "reasonably prudent" broker would do, and he admits he did not consult with anyone who could.[31] His report also fails to cite any actual standard, in any context, applicable to actual brokers. He simply does not have the qualifications to testify concerning "the crucial issue of what an insurance broker advised a client" like AMK9.[32]

Nor, as Judge Hurley found, do Mr. Hager's other experiences qualify him.

First, Mr. Hager is a former Iowa Insurance Commissioner, but he left this out-of state position more than a quarter-century ago. More importantly, this prior experience in Iowa does not mean he can opine "what a broker should have said to the folks in South Florida."[33] Experience as a regulator may have given Mr. Hager familiarity with Iowa regulations, such as licensing requirements,[34] but does not provide any expertise regarding brokers advising their clients about insurance. Likewise, Mr. Hager's Florida legislative committee experience "doesn't speak to the crucial issue of what an insurance broker advised a client."[35] In short, Mr. Hager's

---

[28] Exhibit 8 at 91:16-17; Exhibit 1 at 91:19-92:5.

[29] Exhibit 2 at 10.

[30] Exhibit 1 at 21:1-5; 21:19-21; 22:8-22:9; 23:4-23:5; 23:9-11; 23:13-14; 24:25-25:3.

[31] *Id.* at 25:16-22.

[32] Exhibit 8 at 91:11-15.

[33] *Id.* at 87:7-10.

[34] Florida, in contrast, does not license insurance brokers. Exhibit 1 at 100:7-9.

[35] Exhibit 8 at 91:11-15.

8

QB\38111563.1

regulatory experience does not bear on the discrete subject on which he proposes to testify. *See, e.g., Konikov*, 290 F. Supp. 2d at 1317.

Second, Mr. Hager's report trumpets his experience as a "reinsurance arbitrator," claiming that "the relevance of this experience to this case is that reinsurers have substantial influence on their underlying insurers."[36] However, he admitted that "I'm not familiar with reinsurance being involved in this particular case . . . I'm not familiar with it. I didn't see it impacting anything here, so that's my best answer."[37] He also admitted that he had not reviewed any materials showing "substantial influence" by any reinsurer in this case.[38]

Third, Mr. Hager's past experience as CEO of the National Council on Compensation Insurance ("NCCI")—a position he left over 18 years ago—does not bear on his ability to testify here. Mr. Hager initially testified that NCCI performed underwriting functions in connection with the issuance of insurance policies.[39] In a prior deposition, however, Mr. Hager testified that NCCI had not performed any such underwriting functions in connection with ***any*** insurance policy.[40] When confronted with this discrepancy, Mr. Hager admitted that "NCCI itself did not issue traditional policies as you and I would discuss" and that "to be direct to your question, were we the underwriters for traditional workers' compensation policy? No."[41] Although he testified that NCCI had "responsibility" for "residual market policies," he admitted that there is no such "residual market policy" at issue here.[42] His prior experience with NCCI consequently has no

---

[36] Exhibit 2 at 13.

[37] Exhibit 1 at 46:18-22.

[38] Exhibit 1 at 47:4-8.

[39] Exhibit 1 at 28:14-23.

[40] Exhibit 9 at 66:6-10.

[41] Exhibit 1 at 88:24-89:1, 89:20-22.

[42] *Id.* at 89:9-11.

bearing on his qualifications. *See, e.g., Butler*, 652 F. Supp. 2d at 1272-73 (experience in one area of insurance does not render expert qualified to testify about other areas).

As demonstrated above, Mr. Hager is not qualified to opine regarding the general standard of care applicable to a broker. But he actually proposes to give an even ***more specialized*** expert opinion that Rutherfoord and AMK9 shared a "special relationship," such that Rutherfoord's obligations were "over and above that ordinarily expected of an insurance agent."[43] As shown below, this is an impermissible legal opinion. Equally important, Mr. Hager is wholly unqualified to give any testimony regarding these purported heightened obligations. Although Mr. Hager testified he was "sure" he had previously given such opinions, he could not "recall offhand" those cases, and had "no idea" whether any such special relationship had ever actually been found in Florida.[44] In the only case defendants could locate in which Mr. Hager attempted to give this testimony, Judge Hurley prohibited him from giving it, or any testimony whatsoever.[45]

As AMK9's own counsel previously represented, Mr. Hager is "not qualified" to give expert testimony because he "has no predicate" to testify concerning custom and practice in the insurance industry—he's "simply making it up as he goes along."[46]

### C. Mr. Hager's testimony is unreliable.

Even if the Court determines Mr. Hager is qualified, his proposed testimony is demonstrably unreliable. *Daubert* requires "that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter*

---

[43] Exhibit 2 at 10.

[44] Exhibit 1 at 104:25-105:9.

[45] Exhibit 8 at 91:16-17.

[46] Exhibit 5 at 189.

*Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). This "requires more than simply 'taking the expert's word for it.'" *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.). The Eleventh Circuit noted:

> the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than over lay witnesses. Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weight the value of such evidence against its potential to mislead or confuse.

*Id.* at 1263 (internal citation, quotations, and ellipsis omitted). If the proposed expert "is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). Additionally, courts consider the impact of Fed. R. Evid. 403, because of "particular concern with regard to Rule 403 is the 'powerful and potentially misleading effect of expert evidence.'" *Wilson*, 2015 WL 8956435, *16 (citing *Frazier*, 387 F.3d at 1263).

This is not the first time a federal judge has considered whether Mr. Hager's proposed opinions are reliable. In one case, Mr. Hager opined that an insurance company had "breached its obligations and responsibilities in handling plaintiff's claim." *Sadel*, 2011 WL 292239, *4. The court found that Mr. Hager's report "completely ignores the undisputed record," which "in no way reflects an unreasonable delay" by the insurance company. *Id.*, *12. The court noted that Mr. Hager "fails to address Plaintiff's delays in providing Berkshire relevant information" and thus plaintiff's own "role in the delayed investigation." *Id.* After finding that Mr. Hager's testimony "misses much of the context of this case," the court granted summary judgment. *Id.*

Another federal judge also found Mr. Hager's proposed testimony unreliable, despite his "extensive experience working in and for the insurance industry and in regulating the insurance industry" because, among other reasons, he had "selectively cite[d] passages from *Couch on*

11

*Insurance* and explain[ed] why those passages require[d] a jury verdict" in favor of his client. *Old Line Life Ins. Co.*, 2007 WL 892448, *8-9. Allowing Mr. Hager to testify would require "examination regarding the selectiveness of the quotes Hag[e]r cited and whether they were taken out of context." *Id.*, *9. Because of Mr. Hager's unreliability, the court held that allowing Mr. Hager to give *any* opinion "would violate Rule 403 due to confusion and prejudice." *Id.*

This Court should reach the same conclusion here. At the outset, Mr. Hager's report contains less than two pages of disclosed opinion, and Mr. Hager admitted his report does not disclose all opinions he has actually reached.[47] This failure violates Fed. R. Civ. P. 26(a)(2)(B)(i), and is alone sufficient to disqualify him.

Moreover, the opinions he does disclose are unreliable, for three reasons.

First, Mr. Hager opines that after AMK9 submitted an application for DBA coverage to CNA, "despite the urgency of such matters, Rutherfoord did not bind coverage for DBA until August 12, 2010."[48] Mr. Hager testified that Rutherfoord itself issued the DBA insurance to AMK9, and criticizes Rutherfoord for its delay in issuing coverage to AMK9.[49] According to Mr. Hager, Rutherfoord entered into a contract giving it authority *as a broker* to issue DBA coverage to AMK9.[50] This undisclosed opinion is not based on review of any actual contract, but Mr. Hager's understanding based on "40 years of experience in these arenas."[51] Mr. Hager is simply wrong, as Rutherfoord of course had no authority to issue DBA coverage to AMK9. Only the underwriter, CNA, could issue this coverage.[52] CNA issued coverage to AMK9 only after it

---

[47] Exhibit 2 at 10-11; Exhibit 1 at 18:18-24; 19:21-20:1; 20:3-6; 119:11-17.

[48] Exhibit 2 at 9, ¶¶ 19-20.

[49] Exhibit 1 at 31:20-23.

[50] *Id.* at 120:13-15.

[51] *Id.* at 131:13-17.

[52] Mr. Hager admitted he had not seen any such contract. Exhibit 1 at 118:13-119:2; 121:2-17.

received AMK9's application and performed its own underwriting process. As a broker, not an underwriter, Rutherfoord had no control over the underwriter's decision-making process or its timing, notwithstanding Mr. Hager's insistence that had such control.[53] Nor did Rutherfoord have any authority to bind coverage until CNA provided a quote—again, after completing its underwriting process. Mr. Hager should not be permitted to mislead the jury regarding the roles of a broker and an underwriter in this manner.

Second, although Mr. Hager testified that there is a difference between "program" and "non-program" DBA insurance, he simply did not know whether "program DBA coverage requires all contracts to be United States government funded."[54] In fact, program DBA coverage *is* only available for US government funded contracts.[55] This knowledge, which Mr. Hager does not have, places the parties' following November 6, 2009 conversation in its proper context:

| Ms. Payne: | "Does [the Compass contract] maybe belong in our ***Classified program*** instead? Will they release the SOW?" |
| Ms. Bermudez: | "It could probably go there. I will see if I can get a SOW." |
| Ms. Payne: | "We need to make sure that it ***really belongs there though….DBA only applies to USG funded contracts***…with the work being in Iraq…somehow the USG has to be involved."[56] |

In the context of discussing whether the Compass contract "belongs" in the Classified "program," Ms. Payne did indeed state that such program DBA coverage only applies to USG funded contracts.[57] Mr. Hager admitted he has no knowledge or opinion regarding the accuracy

---

[53] *Id.* at 37:2-10.

[54] *Id.* at 129:17-130:2.

[55] Exhibit 11 at 90:10-91:4.

[56] Exhibit 10 at RFORD104 (emphasis added).

[57] Exhibit 11 at 90:10-91:4.

of this statement.[58] His lack of knowledge means that (1) he is unable to rebut Ms. Payne's testimony regarding program DBA and (2) his testimony is unreliable, as his analysis of the parties' relevant communications would be misleading and confusing to the jury.

Finally, Mr. Hager reached his opinions by completely ignoring undisputed material facts. For example, Mr. Hager argues that AMK9's admitted failure to provide its contract with the Canadian government—which was required as part of the underwriter's application for DBA coverage, and which AMK9 specifically committed to provide to Rutherfoord—was "irrelevant."[59] Mr. Hager also rejects AMK9's testimony, including from its Fed. R. Civ. 30(b)(6) deponent, that AMK9 bears responsibility for failing to obtain DBA coverage before accidents to three of its employees.[60] According to Mr. Hager, this sworn testimony about crucial communications in this case has "no bearing" on his opinions.[61]

### D. Mr. Hager's Testimony Will Not Assist the Jury.

Finally, Mr. Hager should be disqualified because his testimony will not assist the jury, as he purports to instruct the jury on the law and tell the jury what result to reach.

At trial, the applicable law "is not to be presented through testimony and argued to the jury as a question of fact." *United States v. Oliveros*, 275 F.3d 1299, 1306-07 (11th Cir. 2001). Rather, it is "the Court's function to instruct the jury on the law, not the parties through their expert witnesses." *Goldman v. Bracewell & Patterson LL.P.*, No. 6:04-cv-725-Orl-28JGG, 2005 WL5740234, at *4 (M.D. Fla. Sept. 13, 2005) (experts may not give opinion as to whether defendant owed plaintiff a fiduciary duty "or whether Defendants breached any such duty," may

---

[58] Exhibit 1 at 129:17-130:2.

[59] Exhibit 1 at 40:10-12; 41:17-19; 159:11-16.

[60] *Compare* Exhibit 1 at 163:3-14 *to* Exhibit 6 at 243:20-244:18; Exhibit 7 at 236:8-237:11.

[61] Exhibit 1 at 164:3-6; 164:20-24.

not "give the jury examples of what conduct does or does not breach the standard," and may not "offer testimony as to the legal implications of conduct").

Thus, courts routinely exclude expert testimony that tells the jury what the law is, such as "whether Defendants owed [plaintiff] a fiduciary duty," or the particular "standard of care" to which a party "is subject." *Goldman*, 2005 WL5740234, at *4; *U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, No. 6:09-CV-1963-ORL-28, 2011 WL 3753581, *5 (M.D. Fla. Aug. 25, 2011) (striking expert opinions regarding defendant being "subject to a lower standard of care"); *Butler*, 652 F. Supp. 2d at 1272 (noting "the great bulk of Mr. Jenkins' proposed testimony sets forth legal standards for insurers under Georgia law. The jury, however, is not to receive its instructions of law from a party's expert, rather it receives them from the judge"). Courts regularly exclude purported experts where they opine as to the implications of a party's conduct or tell the jury what result to reach. *Montgomery*, 898 F.2d at 1541 ("Donaldson testified that in his opinion Aetna had a duty to hire tax counsel in this case. This was a legal conclusion, and therefore should not have been admitted."); *Big Apple Consulting*, 2011 WL 3753581, at *5 n.5 (proposed expert "an experience securities lawyer—is only qualified to opine as to the legal aspects of securities trading, not as to the general practices of brokers and dealers or IR/PR firms"). While an expert may opine as to the nature of the obligation that a particular standard of care requires, such as whether certain conduct would be considered "reasonable," an expert cannot go beyond to express an "opinion regarding the proper legal standard that should be applied." *Big Apple Consulting*, 2011 WL 3753581, at *5.

Other federal courts have disqualified Mr. Hager for attempting to provide this kind of legal opinion under the guise of expert testimony.[62] Indeed, Mr. Hager himself testified that

---

[62] *See, generally*, *Old Line Life Ins. Co.*, 2007 WL 892448, at *8-9 (striking Mr. Hager's report and affidavit as impermissible legal opinion on proper distribution of life-insurance benefits); *Sadel*, 2011 WL 292239, at * 11-12

Judge Hurley found that his proposed testimony on a "special relationship"—exactly the same testimony he offers here—was an impermissible legal opinion.[63]

Here, Mr. Hager directly opines as to the particular obligations that Rutherfoord allegedly owed to AMK9, and further opines that Rutherfoord breached all of these obligations. That this is the focus of his report is beyond dispute—in the two pages of his disclosed opinion, Mr. Hager uses the word "breached" eight times.[64] Indeed, Mr. Hager goes further, opining that there was a "special relationship" between the parties that "created additional obligations and responsibilities" that were "over and above that ordinarily expected of an insurance agent."[65] This opinion also forms the foundation of Mr. Hager's other opinions.[66]

In repeatedly arguing that Rutherfoord "breached" its alleged duties to AMK9, Mr. Hager's testimony improperly invades the exclusive province of the Court to "instruct the jury on the law" and for that reason should be excluded. *See, e.g., Goldman*, 2005 WL 5740234, at *4 (precluding Plaintiffs expert from giving the jury "examples of what conduct does or does not breach the standard [of care]"); *Butler*, 652 F. Supp. 2d at 1272 (excluding "proposed testimony set[ting] forth legal standards for insurers under Georgia law"); *Lopez*, 2015 WL 5584898, *7 (striking expert opinions as unhelpful to the jury because they "offer nothing more than what lawyers for the parties can argue in closing arguments").

---

(refusing to consider Hager's report in deciding cross-motions for summary judgment where Hager "completely ignore[d] the undisputed record," "miss[ed] much of the context of the case," and "include[d] inadmissible legal opinions about Pennsylvania insurance law"), aff'd, 473 F. App'x 152 (3d Cir. 2012); *Nova Cas. Co.*, 2005 WL 5955694, at *2 (granting motion *in limine* to exclude Mr. Hager's testimony "regarding the interpretation" of an unambiguous provision of an insurance policy).

[63] Exhibit 1 at 55:13-56: 2; 104:4-7.

[64] Exhibit 2 at 10-11.

[65] *Id.* at 10, ¶ 4.

[66] *Id.* at 11 ("Each opinion is itself, as applicable, support for every other opinion.").

Nor is expert testimony regarding any alleged "breach" necessary. Once the duties of a broker are explained to the jury—by a properly credentialed expert, and one who does not conflate the role of an underwriter with the role of a broker—the jury is fully capable of determining whether those duties have been met. *Jones*, 2008 U.S. Dist. LEXIS 40120, at *31 (it is "for the jury" to "draw conclusions" as to whether an insurance professional has met the standard of care); *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony properly excluded as "valueless, since the expert could offer nothing beyond the understanding and experience of the average citizen").

### III. Conclusion

Mr. Hager's prior experience and background do not make him qualified to render opinions regarding the standard of care a broker is required to meet on a day-to-day basis when advising clients regarding insurance. Additionally, the opinions he offers are unreliable and will not assist the jury. The Court should grant defendants' motion.

Dated: January 15, 2016.

/s/ Sara D. Dunn
Sara D. Dunn, Esq.
sara.dunn@quarles.com
Florida Bar No. 106923
Joshua D. Maggard
joshua.maggard@quarles.com
Admitted *Pro Hac Vice*
QUARLES & BRADY LLP
101 East Kennedy Blvd., Suite 3400
Tampa, FL 33602-5195
Phone: 813-387-0300
Fax: 813-387-1800

*Counsel for Defendants, Rutherfoord International, Inc. and Sara Payne*

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 15, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Brian D. Stokes, Esq.,
Alvarez, Winthrop, Thompson & Storey, P.A.,
390 N Orange Ave, Ste 600
P.O. Box 3511
Orlando, FL 32802
(407) 398-6835
bdstokes@aswpa.com

Carlos J. Burruezo, Esq.
Bertha L. Burruezo, Esq.
Vanessa A. Braga, Esq.
Burruezo & Burruezo, PLLC
941 Lake Baldwin Lane, Suite 102
Orlando, Florida 32814
(407) 754-2904
carlos@burruezolaw.com
bertha@burruezolaw.com
vanessa@burruezolaw.com

          s/Sara D. Dunn
          Attorney