| | |
|---|---|
| AMERICAN K-9 DETECTION, etc., et. al., | UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION |
| Plaintiffs, | |
| | Case No. 6:14-cv-1988-ORL-37TBS |
| vs. | |
| RUTHERFOORD, etc. et. al., | |
| Defendants. | |
| _____/ | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS

Plaintiffs, AMERICAN K-9 DETECTION SERVICES, INC. and AMERICAN K-9 DECTECTION SERVICES, LLC, ("AMK9"), file their Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Based on Statute of Limitations. As grounds for denying the motion, AMK9 would respectfully show:

**I.     Introduction:** This is an action by AMK9 against Rutherfoord International, Inc. ("Rutherfoord") and Sara Payne ("Payne") seeking damages as described in further detail below. In October 2009 AMK9 was advised by Payne, an employee of Rutherfoord, that its Defense Base Act Insurance (DBA) would need to be moved from ACE due to its history of losses. Defendants represented to AMK9 that they had special skill, expertise and knowledge in DBA insurance coverage, and AMK9 relied upon Defendants' representations. Bermudez Aff. ¶9; AMK9 Aff. ¶6, 9, and 13.

In November of 2009, AMK9 notified Defendants of its need for DBA in connection with a contract it had entered into with the Canadian government. This was AMK9's first time seeking DBA for a contract with a foreign government. AMK9 Aff. ¶8. At that time, Defendants incorrectly advised AMK9 that DBA would not be available for the Canadian contract since it was not funded by the United States ("USG"). AMK9, relying upon Rutherfoord's

1

representations, did not obtain a DBA policy for the Canadian Contract. When AMK9 later came to learn that Defendants had provided incorrect information, and that DBA insurance was in fact available, they obtained a DBA policy for the remainder of the term of the contract, effective August 12, 2010. AMK9 Aff. ¶8. After incorrectly advising AMK9 that DBA was unavailable for its Canadian contracts, Payne indicated that the only potential option available would be to obtain a personal accident policy through Lloyd's of London. Accordingly, AMK9 did, in fact, purchase personal accident policies for its employees working under the Canadian contracts. AMK9 Aff. ¶10. The personal accident policies did not provide the same insurance coverage or benefits as would DBA. Additionally, the personal accident policies did not provide to AMK9 the same immunities and protections as would DBA.

Subsequently, while AMK9 did not have DBA, several dog handlers working in Afghanistan, Lloyd Williamson, John Logie, and Richard Cicero, were injured on the job. AMK9 was later required to pay to or on behalf of these injured workers the benefits to which they would have been entitled, had DBA been in place at the time of their respective accidents.

On October 27, 2014, AMK9 filed the current lawsuit against Rutherfoord only in Seminole County Court. [Dkt. No. 3].[1] The Second Amended Complaint is currently the operative pleading in this matter. In the motion it is contended that AMK9 was late filing its lawsuit. Based upon the arguments and authorities cited herein, the motion should be denied.

**II. UNDISPUTED AND DISPUTED ISSUES OF FACT:** Defendants have provided a liberal, if not incorrect, characterization of some of the evidence and testimony upon

---

[1] AMK9 filed its Amended Complaint and Demand for Jury Trial on November 24, 2014 to correct the misnomer of Rutherfoord which had originally been referred to as "Marsh & McLennan Agency, LLC--Rutherfoord Division." [Dkt. No. 2]. There has been no suggestion made that the Amended Complaint or Second Amended Complaint do not relate back to the date this lawsuit was originally filed.

2

which they rely.[2] For example, in paragraph 24 Defendants state: "In August 2010, when committing to provide Mr. Cicero all benefits he would be entitled to receive under a DBA policy, AMK9 knew that its limits under the Culver policy had already been exhausted." However, a review of the testimony to which reference is made reveals this to be inaccurate. At page 31:8-31:11 the following exchange occurred:

> Q:   So as of August 2010, AMK9 knew that its Culver policy limits *would be exhausted* for Mr. Cicero (Emphasis added)?
>
> A:   Yes.

The actual testimony, as opposed to the paraphrase, reveals that the Culver benefits had not "already been exhausted." The testimony concerned an anticipated future event. Defendants also reference testimony on pages 57:15-59:1. However, a review of the actual testimony reveals that there is no reference made to whether the Culver policy benefits are exhausted. The final reference to 336:3-336:19 refers to testimony given by Carla Bermudez-Rivera on page 210 of her deposition taken on February 27, 2012 in the related litigation brought by Mr. Cicero. A review of her testimony reveals that it too focused on the future exhaustion of the Culver policy limits as opposed to confirming that the benefits were, in fact exhausted.

Notwithstanding the foregoing, AMK9 does not dispute the statements of fact contained in paragraphs 1, 2, 3, 4, 5, 6, 7[3], 8[4], 9[5], 10, 14[6], 15, 16, 17, 18[7], 23[8], 25, 26[9], 36, 39[10] and 40.

---

[2] It should also be noted that while Defendants' motion purports to be based upon the statute of limitations, they have devoted substantial space to a recitation of facts regarding the reasons AMK9 was without DBA insurance. This discussion would appear to be more appropriate were the issue before this Court that of negligence.

[3] Although AMK9 does not contest the statement of fact referenced in paragraph 7 it should be noted that with the exception of the first reference, the testimony cited is either speculative or does not support the statement of fact.

[4] Although AMK9 does not contest the statement of fact referenced in paragraph 8 it should be noted that the references cited are in the context of the Compass contract, which is not the contract involved in this matter. In fact, Defendants admit as much in Exhibit 1, 151:14-19.

[5] However, as established by the record evidence, this request was made after Payne indicated, in no uncertain terms, that DBA was only available for contracts funded by the United States government and failed to note any possible exceptions. Bermudez Aff. ¶3, 4, and 5; AMK9 Aff. ¶8.

[6] Again this is in the context of the Compass contract which is not involved in this matter.

[7] As to paragraphs 17 and 18, these individuals were working under AMK9's Canadian contract.

3

AMK9 does dispute the statement of fact contained in paragraphs 11 and 22 as Ms. Bermudez did not "fail" to provide materials to the Defendants.[11] Rather, given the number of times Defendants had adamantly told her that DBA insurance was unavailable for non-USG funded contracts, she did not send Defendants a copy of the Canadian contract. Additionally, at no time, did the Defendants indicate that there were any exceptions to the requirement for USG funding. Bermudez Aff. ¶3, 4, and 8.

AMK9 also takes issue with the statements of fact contained in paragraphs 12 and 13 as the testimony to which reference is made does not support the conclusions the proposed conclusions. As discussed in the previous paragraph, Ms. Bermudez did not "fail" to provide any materials to Defendants. She determined it was unnecessary to do so based upon the information and advice given her by Defendants. Furthermore, the testimony to which reference is made says nothing about why Payne could or could not take any action. The testimony was also provided by someone who lacks the predicate knowledge to express the opinion in the testimony. As such, it should not be relied upon by the Court.

AMK9 does not dispute the statements contained in paragraphs 19 and 20 although much of the testimony to which reference is made does not, in fact, support the characterization set out by Defendants. Defendants seem to suggest that DBA benefits were paid by AMK9 in August 2010. However, while promises were made and assurances given, AMK9 did not pay any DBA benefits to or on Mr. Cicero's behalf until December 2010 or after. AMK9 Aff. ¶31, 35, and 36.

---

[8] Although the testimony cited does not support the characterization offered by the Defendants.
[9] With respect to the payments made to or on behalf of Mr. Williamson and Mr. Logie it should be kept in mind that these payments were made before AMK9 was aware of the incorrect advice which Defendants had provided to it.
[10] AMK9 does, however, dispute the date on which it sustained legally cognizable damages.
[11] The testimony referenced by the Defendants does not support the conclusion which they advance. In fact, the references to exhibit 2 concern hypothetical situations. Furthermore, there are references made to Mr. Flicker about whom AMK9 had no knowledge prior to August 2010. AMK9 ¶28.

AMK9 disputes the statements contained in paragraph 21 as none of the testimony referenced contains any statement regarding AMK9's motives for doing what it did. In fact, it was the intention of AMK9 to assist and support Mr. Cicero and his family during the time it would take to sort out the insurance situation regarding DBA and the Culver policy. These actions were done because it was the right thing to do and to take care of its employee, not because AMK9 was defending any sort of claim or otherwise taking defensive action, but because AMK9 viewed Mr. Cicero as a member of the family and acted towards him as a family member. Reid Aff. ¶10, 14, 17, and 24; AMK9 Aff. ¶19 and 24.

AMK9 disputes the statements contained in paragraph 24 as previously discussed.

The statement contained in paragraph 27 is another example of a liberal, if not incorrect, characterization of the evidence and testimony relied upon. To the extent it is intended to suggest that AMK9's claim accrued in August 2010 AMK9 disagrees. AMK9 did not sustain any loss, at that time, as it was reimbursed by the Culver policy for these payments. AMK9 Aff. ¶21 and 23. It was not until October 10, 2011, when AMK9 paid the Culver proceeds to Mr. Cicero that AMK9 sustained a loss with respect to these payments as well as those made in September, October and November 2010. If one accepts October 10, 2011 as the date on which AMK9's cause of action accrued, which AMK9 does not, this lawsuit was filed prior to the expiration of the limitations period.

The statements contained in paragraphs 28 and 29 are misleading. As a result, AMK9 contends that these facts are in dispute. First, while Defendants reference "several steps" the cited testimony concerns incident reporting and after action reporting only. Second, there is no date referenced in the statement as to when AMK9 took any of the referenced actions. Finally, any investigation undertaken by AMK9 was done to determine what had happened because at

this time, several AMK9 handlers had been injured in various incidents in a fairly short period of time and AMK9 wanted to determine whether this was a part of a strategy adopted by the insurgents to target dog handlers or the result of inadequate training or other factors. It was not conducted as a defensive action or in anticipation of a potential claim or litigation. Reid Aff. ¶20; AMK9 Aff. ¶20.

Likewise, the statements contained in paragraph 30 are misleading and, as a result, AMK9 asserts that these facts are in dispute. While it is true that a "huddle" occurred in August 2010 after Mr. Cicero's accident, it is incorrect to state that it was limited to AMK9's in-house attorneys – as there was only one - or that it was done to "investigate the Cicero accident." The purpose of the meeting of AMK9's leadership was to establish a division of labor and determine which individual would perform a specific task. It was not conducted as a defensive action or in anticipation of a potential claim or litigation. Reid Aff. ¶19, AMK9 Aff. ¶24, Reid Depo. at page 188:2-21.

Although the statements contained in paragraphs 32 and 33 are generally correct they are misleading as Defendants imply that the referenced expenses were paid in August 2010. This is incorrect. AMK9 did not pay any of Mr. Cicero's medical expenses until March 30, 2011. AMK9 Aff. ¶36.

The statements made in paragraph 34, while correct, are irrelevant and immaterial. AMK9 is not seeking to recover as damages any expenses incurred by its representatives travelling to Germany. These expenses would not have been covered by DBA which AMK9 would have obtained but for Defendants' negligence and misconduct. AMK9 Aff. ¶25.

AMK9 disputes the purported statements of fact contained in paragraphs 35 and 37. The record evidence shows that Payne's request for the SOW was in connection with the separate and

6

wholly independent Compass contract, not the Canadian contract. With respect to the Canadian contract, Payne made it clear to Ms. Bermudez that: (i) DBA applied only to contracts funded by the USG, (ii) that Payne did not have a market willing to write foreign workers' compensation insurance in Iraq or Afghanistan and (iii) AMK9's only alternative was to obtain a personal accident insurance policy through Lloyds of London. Bermudez Aff. ¶3 and 4.

The comments contained in paragraph 38 are not statements of fact but rather speculative responses made by people without the required expertise to answer to hypothetical questions posed to them.[12] Furthermore, some of the testimony cited does not support the alleged fact as represented by Defendants. For example, Mr. Reid's testimony at page 244:8-18 concerns the speculative reason why DBA was not obtained.

**III. STANDARD OF REVIEW:** Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. Fed.R.Civ.P. 56. In evaluating the evidence the court must interpret the facts in the light most favorable to the nonmoving party, drawing all inferences in its favor. *Potter v. Ray*, 461 F.3d 1315, 13220 (11th Cir. 2006). As a result, the moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* It is not until the moving party has discharged this burden that the non-moving party must then go beyond the pleadings and its own affidavits, depositions, interrogatory answers, and admissions of file, designate specific facts showing there is a genuine issue of material fact for trial. *Id.*

The court "must avoid weighing evidence or making credibility determinations" at the summary judgment stage. "It is not the role of the court to weigh the facts. Rather the determination is of whether ... there are genuine factual issues that properly can be resolved only

---

[12] In fact, Mr. Murray states as much at pages 320:10, 321:13 and 322:20.

by a finder of fact because they may reasonably be resolved in favor of either party." *Hilburn v. Murata Elecs. N. Am.*, 181 F.3d 1220, 1225 (11th Cir. 1999) (internal quotations and citations omitted.). If there is a conflict between the parties evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder, evaluating the evidence, could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328 (11th Cir. 1988).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2s 202 (1986). In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In addition, a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

**IV.  AMK9'S CLAIMS DID NOT ACCRUE UNTIL THE UNDERLYING CLAIMS WERE RESOLVED:** Defendants assert that "where no insurance policy is at issue, a client's cause of action against its broker accrues as soon as the client incurs damages as a result of not having insurance." However, Defendants cite no authority to support this proposition or which so holds.

Significantly, Defendants omit any material discussion of the decision in *Medical Data Sys. v. Coastal Ins. Group, Inc.*, 139 So.3d 394 (Fla. 4th DCA 2014) *review denied by Am. Pro'l Liab. Underwriters v. Medical Data Sys.*, 157 So.3d 1040 (Fla. 2014), although they do make passing reference to it. AMK9 submits that *Medical Data* is directly on point with this matter, controls the resolution of this motion and requires that the motion be denied.

In *Medical Data*, the plaintiff, a national medical debt collector, relied upon its broker and agent to obtain liability coverage appropriate to its needs. For reasons not explained in the opinion, the policy obtained for 2006-2007 excluded coverage for debt collection activities. Starting in April 2006 lawsuits were filed against the plaintiff for claims arising out of violations of the Fair Debt Collection Practices Act. The plaintiff retained counsel to defend the claims and received a bill on June 1, 2006. The insurance company denied coverage under the policy in September 2006; a decision which it appears was not contested or litigated. The underlying claims were settled in June 2008. In November 2009 plaintiff sued its broker and agent for negligence in failing to obtain appropriate insurance coverage. On August 25, 2010, more than four years after it had arguably first sustained damages, plaintiff filed an amended complaint, adding American Professional Liability Underwriters, Inc. (APLU) as a defendant, alleging that its broker had retained the services of APLU as a broker to procure the insurance.

APLU moved for summary judgment, alleging any cause of action against APLU was barred by the four year statute of limitations. The trial court entered summary judgment concluding that the cause of action accrued in June 2006 when it retained counsel and first started paying legal fees. On appeal the court, applying *Blumberg v. USAA Cas. Ins. Co.*, 790 So.2d 1061 (Fla. 2001),[13] reversed the summary judgment and held that the plaintiff's cause of action for negligence against APLU **"did not accrue until June 2008, when the underlying**

---

[13] Another decision Defendants reference but to which they give short shrift.

**claims for violation of the Fair Debt Collection Practices Act were settled.** (Emphasis added.)" 139 So.3d at 396-97.[14] In so doing, the court in *Med. Data* clearly held that, in situations like the one before this Court, the loss does not occur, and the cause of action does not accrue, until the conclusion of the underlying judicial proceedings in which the plaintiff is found liable for damages that would have been covered by the insurance which the broker failed to procure. Notably, Defendants have not cited this Court to any authority to the contrary and AMK9 could find none.[15] As a result, *Med. Data* is applicable to this cause and the motion should be denied.

In *Blumberg* the Florida Supreme Court found that the limitations period for a negligence claim against an insurance agent for negligence in procuring insurance did not accrue until the underlying proceeding was final. In doing so, the Court explained:

> ... we hold that, in the circumstances presented here, **a negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings** or, if there are no related or underlying judicial proceedings, when the client's right to sue in the related or underlying proceeding expires. If a negligence/malpractice action is filed prior to the time that a client's right to sue in the related or underlying judicial proceeding has expired, or if a negligence/malpractice action is filed during the time that a related or underlying judicial proceeding is ongoing, then the defense can move for an abatement or stay of the claim on the ground that the negligence/malpractice action has not yet accrued. The moving party will have the burden of demonstrating that the related or underlying judicial proceeding will determine whether damages were incurred which are causally related to the alleged negligence/malpractice. The determination of this will be for the trial court. **Similarly, if a party raises an affirmative defense that a**

---

[14] In an attempt to avoid application of *Med. Data* Defendants have attempted to distinguish it from *Kelly v. Lodwick*, 82 So.3d 855 (Fla. 4th DCA 2011), the sole case upon which they rely, on the basis that in *Kelly* there was no insurance policy in effect whereas in *Med. Data* there was a policy in place but it did not provide the necessary coverage. This is a distinction which does not make a difference. Certainly, Defendants offer no explanation as to why the outcome in this case should be different than that in *Med. Data*. In both cases, the plaintiffs were, as a result of the negligence of insurance brokers, without insurance protection at the inception of the claims being asserted against them. As a result, *Med. Data* controls and requires that the motion be denied.

[15] The cases cited by the Defendant involved entirely different fact patterns nowhere similar to those before this Court. For example, *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182 (Fla. 2003) concerned the legal issue of duty in the context of maintenance of a street light. *Gracey v. Eaker*, 837 So.2d 348 (Fla. 2002) concerned the application of the impact rule.

10

**negligence/malpractice action has expired, the party bringing the action may file a reply asserting the avoidance of the statute of limitations due to a related or underlying judicial proceeding.**

790 So.2d at 1065 (emphasis added).

The decisions in *Medical Data* and *Blumberg*, which require that the pending motion be denied, are consistent with the approach of the Florida courts when determining when a cause of action accrues as utilized in other types of malpractice claims. In the context of other malpractice claims, the rule in Florida uniformly is that the cause of action does not accrue until the underlying claim has been resolved. The rationale for this rule is that until the underlying claim has been resolved the claim is hypothetical and damages are speculative. *Silverstrone v. Edell*, 721 So.2d 1173, 1176 (Fla. 1998) (In which the Court noted that this "bright line rule will provide certainty and reduce litigation over when the statute starts to run.") *See also, Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323 (Fla. 1990); *Haghayegh v. Clark*, 520 So.2d 58 (Fla. 3rd DCA 1988) (statute of limitations does not commence to run until the amount of damages are ascertained); *Bierman v. Miller*, 639 So.2d 627 (Fla. 3rd DCA 1994); *Perez-Abreu, etc. v. Taracido*, 790 So.2d 1051 (Fla. 2001); *Fremont Indem. Co. v. Carey, Dwyer, etc.*, 796 So.2d 504 (Fla. 2001) (rejecting the argument that damages were sustained as soon as plaintiff incurred attorney's fees and costs as a result of lost opportunity to settle); *Gluckman v. Persol N. Am., Inc.*, 813 So.2d 122 (Fla. 4th DCA 2002) (holding that claim for legal malpractice accrued on the date of execution of the settlement agreement in the underlying litigation); *Burgess v. Lippman*, 929 So.2d 1097 (Fla. 4th DCA 2006) (citing to *Blumberg*); *Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So.2d 962 (Fla. 2007); and *Armour v. Hass*, 40 FLW D807 (Fla. 4th DCA 2015). In fact, had AMK9 filed suit when Defendants claim it should

11

have, such litigation would have been subject to being abated as premature pursuant to the decisions in *Bierman*, *Burgess*, and *Armour*.

It should also be kept in mind that AMK9 required Defendants' assistance in connection with the defense of the lawsuit brought by the Ciceros. Among other things that action alleged that AMK9 had breached its contract with Mr. Cicero by, among other things, failing "to provide insurance comparable to Defense Base Act insurance." Cicero Complaint ¶34. To defend against this claim part of AMK9's defense required it to contend that Defendants were correct when the opined that the PA/Med policy was comparable to DBA. Absent the rule established by the above referenced cases, AMK9 would have been in unenviable position of being forced to take inconsistent positions. The *Med Data* rule avoids such an untenable position being foisted upon AMK9.

The result mandated by the *Med. Data* decision, which Defendants concede "provides a refinement," Motion at p. 10, to the general rules regarding when a cause of action accrues in this context, also makes sense from a public policy and court resources standpoint. The rule urged by the Defendants, but for which there is no legal support, would encourage a defendant to rush to judgment so as to reduce its potential exposure despite the fact that damages are still being incurred by the injured party. Under such circumstances, the injured party is on the horns of a dilemma. One option would be for the injured party to commence litigation prematurely, thereby potentially limiting the recoverable damages should the court deny a request for abatement. The other option would be to file multiple successive lawsuits seeking to recover damages incurred subsequent to the resolution of the earlier action, assuming such an approach is not precluded by the rules against splitting causes of actions. Neither would be palatable to either the injured party or the judicial economy of the courts. The Florida Supreme Court is aware of the potential

problems which would be created if the rule was as Defendants suggest. The holdings in the cases cited above, and particularly that in *Med. Data*, allows the injured party to obtain a full recovery in one piece of litigation and, at the same time, avoids the expenditure of court resources and waste of judicial time with multiple lawsuits involving the same parties and the same issues.

Application of the authorities referenced above to this matter, leads to the conclusion that, contrary to Defendants' suggestions, AMK9's claims did not accrue until the underlying claims of Williamson and Cicero[16] were resolved in August 2013 and December 2013.[17] Accordingly, AMK9's lawsuit was timely commenced and the motion should be denied.

**V. FACTUAL ISSUES EXIST AS TO WHEN AMK9 SUSTAINED REDRESSABLE DAMAGES AND/OR TOOK STEPS TO DEFEND ITSELF WHICH PRECLUDE ENTRY OF SUMMARY JUDGMENT:** Ignoring the decision in *Medical Data* Defendants contend that AMK9's cause of action accrued no later than August 31, 2010, the date on which they assert AMK9 first incurred damages. In an attempt to support this argument, Defendants first claim that this is the trigger date because AMK9 "promised Mr. Cicero that it would pay all benefits to which he would have received under a DBA policy." Motion at p. 14. However, this position overlooks the fact that regardless of whatever promises were made no losses of any kind were incurred at that time since AMK9 could have changed its mind and decided not to follow through on its gratuitous promise.[18]

---

[16] There was an administrative proceeding seeking DBA benefits commenced by Mr. Cicero on December 22, 2010 but which was ultimately abandoned on or about September 23, 2011 in favor of bringing a civil lawsuit. It was not until the DOL proceeding was resolved that AMK9 knew with certainty that it would not have the protections provided by DBA.

[17] The fact that the Logie claim, which remains open and pending, albeit close to conclusion, although arguably premature, does not alter the analysis regarding when AMK9's claim accrued.

[18] Contrary to Defendants' representations, this promise did not provide the basis for Mr. Cicero's later litigation against AMK9. A review of the Complaint filed in that case, a copy of which has been filed with the Court, reveals that it sought damages for breach of contract, negligence and negligent misrepresentation along with derivative loss

Second, although AMK9 did the right thing to take care of its employee pay Mr. Cicero his salary for the months of August, September and October, AMK9 did not sustain any loss, at that time, as AMK9 was reimbursed by the Culver policy. AMK9 Aff. ¶23; Reid Aff. ¶21. It was not until October 10, 2011, when AMK9 paid the Culver proceeds to Mr. Cicero that AMK9 sustained a loss with respect to these payments.

With respect to Mr. Cicero's medical bills, the record is clear that AMK9 did not pay any of Mr. Cicero's medical expenses until March 30, 2011. AMK9 ¶36.

Defendants next assert, based upon *Kelly*, that AMK9's cause of action accrued on some unidentified date when AMK9 allegedly took "steps to defend itself against the underlying plaintiff's possible suit." However, in *Kelly* the court did not hold that whenever a party lacking insurance takes steps to defend itself the limitations period begins to run. Instead, the court indicated "that situations may occur," citing a number of actions which "may" cause the statute of limitations to attach. 82 So.3d at 859. As a result, it is necessary for the Defendants to attempt to place their own characterization on the events which occurred subsequent to the Mr. Williamson, Mr. Logie, and Mr. Cicero accidents and suggest the inferences to be drawn. AMK9 disputes Defendants' characterization as well as their suggested inferences. Accordingly, the motion must be denied. Summary judgment may be inappropriate even when the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Elec. Tech., Inc. v. Wackenhut Prot. Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982).

---

of consortium claims based upon events which occurred prior to Mr. Cicero's accident. Defendants also incorrectly assert that "AMK9 made this commitment despite knowing that its Culver personal accident policy limits had been exhausted." Motion at p.18. As discussed previously, this is statement is misleading and incorrect.

In support of this contention, Defendants indicate that after the incidents, "AMK9 immediately prepared an 'Incident Report' and 'After Actions Report.'" However, absent from the record is reference to any date on which AMK9 supposedly took these actions. In fact, the testimony upon which Defendants rely is, at best, speculation and, therefore, inadmissible. AMK9 has been unable to locate any record of conducting any sort of investigation or preparing any sort of incident report after Mr. Williamson's or Mr. Logie's accident.

Furthermore, as established by the record, any investigation undertaken by AMK9 after the Cicero accident was done to determine what had happened because at this time, several AMK9 handlers had been injured in various incidents in a fairly short period of time. AMK9 wanted to determine whether this was a part of a strategy adopted by the insurgents to target dog handlers or the result of inadequate training or other factors. It was not conducted as a defensive action or in anticipation of a potential claim or litigation. Reid Aff. ¶20; AMK9 Aff. ¶20.

Defendants next attempt to trigger the limitations period in August 2010 by pointing to the fact that AMK9 flew representatives to visit Mr. Cicero in Germany. However, the record establishes that this was done in an effort to support and care for its employee and AMK9 family member. AMK9 was not defending any sort of claim or otherwise taking defensive action by doing so. Instead, AMK9 viewed Mr. Cicero as a member of the family and acted towards him as a family member. Furthermore, AMK9 is not seeking to recover as damages any expenses incurred by its representatives traveling to Germany as these expenses would not have been covered by DBA. AMK9 Aff. ¶25.

Defendants also claim that the statute of limitations somehow commenced in August 2010 based upon the occurrence of an in-house "huddle." However, the purpose of the "group huddle" held in August 2010 was to establish a division of labor and determine which individual

would perform a specific task. It was not conducted as a defensive action or in anticipation of a potential claim or litigation. Reid Aff. ¶19, AMK9 Aff. ¶24, Reid Depo. at page 188:2-21.

Finally, Defendants allege that AMK9 "sought advice from outside counsel when evaluating potential responses to the Cicero accident." In order to do so, Defendants improperly ask this Court to interpret the evidence so as to draw the conclusion Defendants desire. Furthermore, the evidence is in conflict regarding Mr. Flicker's role in this matter. As indicated in AMK9's Affidavit, AMK9 has determined that it did on August 25, 2010 engage Keith Flicker, Esquire for the limited purpose of providing legal services to AMK9 solely for representation of AMK9 in the Defense Base Act claim of Mr. Cicero filed with the DOL which was not commenced until December 22, 2010. AMK9 did pay the sum of $5,000.00 as a fee retainer as an advance against services expected to be performed on its behalf. Any funds remaining at the end of the case were to be refunded to AMK9. According to the available records, the earliest invoice received from Mr. Flicker was dated May 15, 2012 and was not paid until August 1, 2012.[19] The employer's form LS-202 which Mr. Flicker submitted to the DOL on or about September 20, 2010 is required by Section 30(a) of the Longshore and Harbor Workers' Compensation Act (LHWCA) to be submitted by employers within ten days of an alleged injury to report to the DOL injuries potentially arising out of and in the course of employment that causes an employee to lose one or more shifts of work. Mr. Flicker was engaged to handle the administrative process of the DBA claim with the DOL. Even though there was a separate question of whether AMK9 had DBA insurance coverage, the DOL had to determine whether the claim was DBA eligible. Neither the hiring of Mr. Flicker or the services

---

[19] Absent is any evidence as to when any draws were made against the fee deposit. Given the date of hire, it is unlikely that any draws were made in August 2010. The filing of the LS-202 occurred in September 2010 and likely would have been billed, at its earliest, sometime in October 2010. In short, there are material issues of fact which preclude the Court from entering Final Summary Judgment based upon the issue of the statue of limitations.

he provided prior to December 2010 were defensive in nature but rather done to comply with the applicable law. AMK9 Aff. ¶28, 29, and 30.

VI. **STATUTE OF LIMITATIONS TOLLED:** Under Florida law there are circumstances which can and do toll the running of the statute limitations. Specifically, applicable to this matter is Florida Statute §95.051(1) (a) which provides:

> The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by:
>
> (a) Absence from the state of the person to be sued.

It is undisputed that Rutherfoord is a foreign corporation doing business in Florida. In fact, Rutherfoord has no offices, employees, agents or other facilities in the state of Florida. Nor, is Rutherfoord authorized by the state of Florida to do business in Florida. It is also undisputed that Payne is an individual and citizen of the state of Virginia and was doing business in Florida. See Defendants' Responses to AMK9's First Requests for Admission.[20] As a result, this matter is identical to *Friday v. Newman*, 183 So.2d 25 (Fla. 2nd DCA 1966) in which the court found that the defendant's absence from the state, pursuant to Fla. Stat. §95.07 (now §95.051(1) (a)), tolled the running of the two year statute of limitations because he could not be served with process in Florida. In *Newman*, the plaintiff sued for damages sustained after being assaulted by the defendant. The evidence established that four days after the assault the defendant left the state, became a resident of New York and remained absent from Florida between that date and the filing of the complaint, except for short interim periods totaling eight month when he was within the state. The court noted that an action for assault and battery, similar to the claims asserted by AMK9, is in personam. As a result, neither substitute nor constructive service of

---

[20] Defendants' responses are evasive and full of objections which lack merit. For example, Defendants have claimed that a request asking Rutherfoord to admit that it: "had no office, employees, agents or other facilities in the state of Florida" somehow call for a legal conclusion. Request 19. These evasive responses should be treated by this Court as admissions on the part of the Defendants.

17

process was available to the plaintiff. This is the identical situation in this matter. Given these facts, the *Friday* court found, as should this Court, that the defendant's absence from the state tolled the statute of limitations in accordance with the cited statute. *See also, Aviation Credit Corp. v. Batchelor*, 190 So.2d 8 (Fla. 3rd DCA 1966); and, *Norman v. Kal*, 550 F.Supp. 736 (N.D. IL 1982).

Defendants devote space to discussing the purpose of statutes of limitation. While AMK9 does not dispute the policy reasons for such limitations, the discussion is irrelevant and immaterial. This is nothing more than an attempt to create a "red herring."[21] In this regard, Defendants complain that AMK9's 30(b)(6) representative was not employed by it at the time of the communications at issue. There is no such requirement contained in the rule and no authority has been cited. The rule does not require the witness to possess any personal knowledge at all. *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894-95 (7th Cir. 2004). Defendants also overlook the fact that almost all of the communications which took place were in writing via e-mail. As a result, Defendants are in possession of all of the communications. Defendants also complain that Ms. Bermudez is no longer employed by AMK9. Although aware of Ms. Bermudez since early in this lawsuit, Defendants have taken no steps to try to depose her. Likewise other former AMK9 employees involved in these events could have been deposed had Defendants wanted to do so.

Defendants argue that if §95.051(1)(a) were to be applied to them, then the statute of limitations would never run. Addressing this concern, the court in *Norman v. Kal*, 550 F.Supp. at 740, discussing the application of a similar Illinois statute, noted:

---

[21] Likewise the fact that courts typically apply tolling to defendants who had been present but then departed Florida, as argued by Defendants, does not change the clear language of the statute which provides a defendant's absence from Florida tolls the statute of limitations.

18

> The effect is that Norman's cause of action would never terminate so long as Kal was not present in Florida for an aggregate of four years, a result this court finds seemingly at odds with the philosophy behind statutes of limitations. Regardless, "the proper function of the ... federal court is to ascertain what the state law is, not what it ought to be." (Citations omitted.)

In support of their position against tolling Defendants assert that since they could have been served, albeit not in Florida, there is no tolling. However, authority is offered which supports the contention that the limitations period is not tolled under such circumstances. In fact, Defendants place much reliance upon the fact that AMK9 served its initial Complaint upon the registered agent for Marsh & McLennan Agency, LLC ("Marsh") and from this premise, without citing any authority, conclude that Rutherfoord was amenable to service and was served in Florida. This takes out of context what transpired. On its website, a page of which has been filed, Rutherfoord refers to itself as: "A Marsh & McLennan Agency, LLC Company" and gives no indication that it is a separate corporate entity. As a result, the original Complaint referred to it as such. Marsh is registered to do business in this state whereas Rutherfoord is not. As a result, the original Complaint was served on the registered agent for Marsh. After being informed by defense counsel of the error, it was agreed that an Amended Complaint should be filed and counsel agreed to accept service. This does not lead to the conclusion that Rutherfoord was amenable to service in Florida. The same rationale is equally applicable to Payne as there is no evidence that she was capable of being served in Florida. Although Payne was personally served it was in Virginia.

This result is not altered by the fact that AMK9 or its counsel knew where the Defendants were located. The statute, by its terms, only requires absence from the state. It does not impose a requirement that the defendant's whereabouts be unknown or that there be concealment.

19

Defendants also claim that they could have been served in Florida pursuant to Fla. Stat. §48.071. However, they fail to offer any authority or evidence in support. In fact, this claim is contradicted by undisputed fact that the Rutherfoord is a foreign corporation doing business in Florida." Rutherfoord has no offices, employees, agents or other facilities in the state of Florida. It is also undisputed that Payne is an individual and citizen of the state of Virginia and was doing business in Florida. See Defendants' Responses to AMK9's First Requests for Admission. There is no evidence that the Defendants were capable of being served in Florida.

Finally, it must be noted that many of the cases relied upon by Defendants on this point are distinguishable from this case in that they concerned situations in which the defendant was deemed by statute to have appointed an agent for service of process.

**VII. CONCLUSION:** WHEREFORE, for all of the reasons stated above, AMK9 respectfully requests that this Court deny Defendants' Motion for Summary Judgment and grant them any other such relief as this Court finds just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 15, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send a notice of electronic filing to counsel for the Defendants: Sara D. Dunn, Esq., Sara.Dunn@quarles.com and Joshua D. Maggard, Esq., Joshua.Maggard@quarles.com.

| *Brian D. Stokes* | *Carlos J. Burruezo* |
|---|---|
| Brian D. Stokes, Esquire (FBN 436968) | Carlos J. Burruezo, Esquire (FBN 843458) |
| Alvarez, Winthrop, Thompson & Storey, P.A. | Burruezo & Burruezo, PLLC |
| P.O. Box 3511 | 941 Lake Baldwin Lane, Suite 102 |
| Orlando, FL 32802 | Orlando, FL 32814 |
| Telephone No.: (407) 210-2796 | Telephone: (407) 754-2904 |
| Facsimile No.: (407) 210-2795 | Facsimile: (407) 754-2905 |
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |
| Designated E-mail Addresses: | Designated E-mail Addresses: |
| bdstokes@awtspa.com; | carlos@burruezolaw.com |
| llavine@awtspa.com | docketing@burruezolaw.com |
| eservice@awtspa.com | kathy@burruezolaw.com |